IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

Civil No. 3:22-CV-00093-PDW-ARS

| | |
|---|---|
| Jessica Allen, individually and on behalf of the Heirs at Law of Lacey Higdem,<br><br>Plaintiff,<br><br>v.<br><br>Myles Brunelle, in his individual capacity; April Azure, in her individual capacity; Rolette County; Roy Cordy, MD; and Presentation Medical Center,<br><br>Defendants. | **DEFENDANTS MYLES BRUNELLE, APRIL AZURE, AND ROLETTE COUNTY'S RESPONSE TO PLAINTIFF'S MOTION TO UNSEAL DOCUMENTS** |

\*\*\*          \*\*\*          \*\*\*

County Defendants[1] submit this response to Plaintiff Jessica Allen's ("Allen") motion to unseal documents (Doc. 122). The 22 videos with accompanying audio (the "videos") should all remain sealed due to the legitimate security threat that uncontrolled public access to the videos would present and because Allen should not be rewarded for already having made the videos publicly available in violation of the protective order in this case.

**I.     ARGUMENT**

Allen's arguments regarding foundation for the videos are addressed in County Defendants' response to Allen's motion for oral argument (Doc. 118).

    **A.     The Videos Should be Sealed Pursuant to N.D.C.C. § 44-04-24 Due to the Significant Risk to Institutional Security Unsealing the Videos would Create**

---

[1] Defendants Myles Brunelle ("CO Brunelle"), in his individual capacity, April Azure ("CO Azure"), in her individual capacity, and Rolette County ("County") are collectively referred to herein as "County Defendants."

- 1 -

The videos should remain sealed because they are exempt from public filing pursuant to N.D.C.C. § 44-04-24 and legitimate security risks presented by public disclosure of the videos outweigh any interest the public has to access the videos. The videos contain information relating to system operations relating directly to the physical or electronic security of a public facility, namely the control room and dispatch room at the Jail. County Defendants recognize that the Court previously denied a motion filed by County Defendants requesting leave to file three of the videos under seal under N.D.C.C. § 44-04-24. Doc. 90. In that Order, the Court determined the three videos would be filed publicly because it concluded that no security concern or other reason warranted the videos being filed under seal. *Id.* at p. 2.

In her brief, Allen asserts County Defendants have "abandoned their Court-rejected argument that § 44-04-24 requires the videos to be sealed." Doc. 123 at p. 3. This is untrue. An email chain indicating County Defendants' have foundation concerns about the videos does not cabin the defenses available to County Defendants to oppose this motion in any way. The Court has not been previously asked to determine whether nineteen of the twenty-two videos at issue in this motion should be sealed pursuant to N.D.C.C. § 44-04-24. Further, the character of the three videos which the Court previously determined did not exhibit security concerns has fundamentally changed, as those three videos (as well as the other nineteen videos at issue) now have audio which reveals conversations alluding to what areas of the Jail the cameras in the control room allow correctional officers to watch, which may allow a bad actor to infer where any blind spots in the Jail's camera security system may be, and present other security risks.

The Attorney General of North Dakota has cautioned that N.D.C.C. § 44-04-24 should be broadly construed to protect surveillance video that is part of a public entity's security system from public disclosure. N.D. Op. Att'y Gen. O-03, 2008 WL 608970 (Feb. 29, 2008). "'Attorney

General opinions interpreting statutes are entitled to respect and [should be followed] if they are persuasive.'" *Border Farm Trust v. SM Energy Co.*, No. 4:13-cv-140, 2014 WL 11016398, at *10 (May 14, 2014) (quoting *Werlinger v. Champion Healthcare Corp.*, 1999 ND 173, ¶ 47, 598 N.W.2d 820). In an Opinion discussing whether Workforce Safety & Insurance violated North Dakota open records laws by refusing to provide copies of video surveillance tapes recorded by WSI's surveillance security system to a requester pursuant to N.D.C.C. § 44-04-24, the Attorney General analyzed the scope of N.D.C.C. § 44-04-24, reasoning:

> The statute makes the security system plans of public entities exempt and broadly defines a "security system plan" as:
>
>> [Including] all records, information, photographs, audio and visual presentations, schematic diagrams, surveys, recommendations, communications, or consultations or portions of any such plan relating directly to the physical or electronic security of a public facility . . . whether owned by or leased to the state or any of its political subdivisions . . . if the plan or a portion of the plan is in the possession of a public entity; threat assessments; vulnerability and capability assessments conducted by a public entity, or any private entity; threat response plans; and emergency evacuation plans.
>
> A surveillance video is a public record under N.D.C.C. § 44-04-17.1(15), but it directly relates to the physical or electronic security of a public facility and is part of WSI's security plan. Additionally, N.D.C.C. § 44-04-24(b) uses the word "includes," which ordinarily is not a word of limitation, but a word of enlargement. As explained in a prior opinion:
>
>> By the use of the word "includes," [in a definition] the Legislature did not intend the listed items to be exclusive. The items set forth in the definition are illustrative, not exhaustive.
>
> The inclusion of surveillance video in the definition of security system plan is consistent with the purpose of the law, which was described to the Legislature as "to exempt information regarding plans and details about infrastructure from getting into the hands of people who would intentionally want to use that information to do harm." Uncontrolled access to surveillance video from all of our public facilities would work contrary to the purpose of the law.

N.D. Op. Att'y Gen. O-03, 2008 WL 608970 at **1-2 (footnotes omitted, underlines in original). The Attorney General concluded, "It is therefore my opinion that surveillance video taken from security cameras meets the definition of 'security system plan' as defined in N.D.C.C. § 44-04-24" and opined that that WSI did not violate the open records law by refusing to provide copies of the surveillance videos to a requester. *Id.* at *2.

Here, the surveillance videos Allen requests to unseal are clearly all part of the Jail's security system and directly relate to the physical or electronic security of the Jail. It is the exact type of information regarding infrastructure bad actors could use to do harm. For example, the audio from the videos Allen requests to unseal contains discussions regarding when the officers in the control room were able to see Lacey Higdem ("Higdem") and the other inmates in her cell block. The videos also reveal the layout of portions of the Jail which inmates are prohibited from accessing, as well as staffing patterns, including the process and actions taken by jail staff during shift changes. This information would be useful to an inmate who wishes to smuggle contraband into the Jail or among other inmates, or harm other inmates or jail staff, as the videos help identify which areas in the Jail are surveilled and which are not. Unsealing the videos would allow uncontrolled access to a critical part of the Jail's security system and enable bad actors to do harm, which goes against the primary purpose of N.D.C.C. § 44-04-24.

Any interest the public has in accessing the videos Allen moves to unseal is greatly outweighed by the security concerns public access to the videos would present. "Institutional security is the *most* compelling government interest in a prison setting[.]" *Murphy v. Mo. Dept. of Corrections*, 372 F.3d 979, 983 (8th Cir. 2004) (quotation omitted; italics added). Notably, Allen does not cite to a single decision which has determined the public's interest in accessing a jail's surveillance video (including audio) outweighs any security risks associated by public disclosure

x

of the video,[2] but numerous courts have determined surveillance video from jails should be sealed due to jail safety concerns. *Curry v. Dich*, No. 1:22cv70 (LMB/IDD), 2023 WL 4002476, at *2 (E.D. Va. June 14, 2023) (granting motion to seal jail videos because the videos "show[ed] the operations and physical structures of the jail," which if viewed by the public could undermine jail safety); *Chrisman v. Board of Cty. Commissioners of Oklahoma Cty.*, No. CIV-17-1309-D, 2020 WL 12948695, at *2 (W.D. Ok. Oct. 9, 2020) (sealing jail surveillance videos, including photographs depicting still images from the videos, because releasing videos to the public domain could be harmful to the security of the jail); *Ortiz v. City and Cty. Of San Francisco*, No. 18-cv-07727-HSG, 2020 WL 2793615, at *8 (N.D. Cal. May 29, 2020) (sealing jail surveillance video showing "the layout of the jail, entry and exit points, angles of the cameras, and other secur[ity] concerns" because even though the "benefits of disclosure [would be] significant, the disadvantages [to jail security] are substantially higher"); *Lumpkin v. Salt*, No. C18-330-RSM-JPD, 2018 WL 4002539, at *2 (W.D. Wash. August 22, 2018) (sealing jail videos public access to the videos would provide "specific intelligence information regarding the surveillance and recording capabilities and weaknesses of cameras at locations depicted in the video at issue" and due to the potential that "inmates would be able to determine from the video staff response times, locations from which staff are responding, the length of time it takes to open doors into an area, staffing patterns, specific defense tactics or techniques, and weaknesses and abilities of individual staff members, all of which would undermine the efficacy of the surveillance system."). The Eighth Circuit Court of Appeals has similarly sealed evidence to protect a prison's institutional safety

---

[2] Allen argues misconduct of Sheriff Gustafson revealed by the audio increases the public's interest in accessing the videos. Allen does not support that proposition with any citation, and does not describe Sheriff Gustafson's purported misconduct. County Defendants deny any misconduct of Sheriff Gustafson is shown by any audio at issue in this motion.

concerns. *See Goff v. Graves*, 362 F.3d 543, 550 (8th Cir. 2004) (upholding an order to seal depositions from confidential prison informants and other evidence due to prison security and informant safety concerns). County Defendants request that the Court leave the videos sealed to alleviate these legitimate security concerns.

      **B.    Allen's Gamesmanship in Covertly Making the Videos Publicly Accessible Should Not be Rewarded**

Allen argues that the public's interest in unsealing the videos is shown in part by media coverage surrounding Higdem's death. Doc. 123 at pp. 5-6. However, the recent media attention to this case stems from Allen's own wrongful actions which have resulted in the videos (and audio) having been publicly accessible. In her brief, Allen provides that "In preparing her response to the County Defendants' summary-judgment motion, Plaintiff discovered that the control and dispatch video files had underlying audio, and she uploaded the full set of videos with accompanying audio in support of her response." Doc. 123 at p. 2. What Allen omits is that on January 27, 2025, she *publicly* uploaded every video which she now seeks to unseal without first having sought or obtained the Court's leave to do so, without any stipulation from County Defendants, and in violation of the protective order in this case. Docs. 32 at p. 5, 99-27, 99-28, 99-29, 99-30, 99-31, 99-32, 99-33, 99-34, 99-35, 99-36, 99-37, 99-38, 99-39, 99-40, 99-41, 99-42, 99-43, 99-44, 99-45, 99-46, 99-47, 99-48. Allen admits that she knew each of the videos had been marked confidential from the time they were first produced in discovery, but she filed them publicly in conjunction with her response to County Defendants' motion for summary judgment anyway. Doc. 123 at pp. 1-2. Allen did not thereafter file any motion to seal the videos once she had publicly filed them, but rather the Clerk's Office—on its own—restricted access to the videos (among other documents Allen wrongfully filed publicly) the next day. *See* Docket Correction, Jan. 28, 2025.

Roughly three weeks later, in the same venue where this case is scheduled to be tried to a jury in fewer than four months, a newspaper article in Fargo's largest newspaper was published which discusses at length what is depicted in the videos, which have only been made public by Allen. *Newly-discovered evidence creates stir in years-old North Dakota jail death case*, Inforum (Feb. 19, 2025), https://www.inforum.com/news/north-dakota/newly-discovered-evidence-creates-stir-in-years-old-north-dakota-jail-death-case (**Ex. A**).[3] The content of the article makes clear that the author had obtained access to the videos containing audio which were uploaded by Allen in violation of the protective order, *id.* at p. 4 (providing, "But video from the control room over the next nearly three hours showed that Brunelle and Azure did not keep their attention on Higdem. Instead, it shows the officers, who were having an affair, kissing and engaging intimately, and watching a horror movie together."), as the videos absent audio provide no indication that Brunelle and Azure were watching a horror movie. Allen's attorney, Andrew Noel, is quoted in that article. *Id.* at p. 7.

Allen's argues that media attention to the circumstances of this case strengthens the public's interest in accessing the videos. But should media attention weigh in favor of Allen when the existence of that attention is demonstrably born from Allen's actions—publicly uploading the videos—taken in violation of the protective order? Stated differently, Allen's actions have exposed the jury pool to a significant amount of sealed information in this case (including the videos, with audio), which creates a distinct potential for bias, all in Allen's favor. The recent article in particular contains language so biased in favor of plaintiff that it may now be difficult or impossible to empanel a jury within this venue which has not been prematurely enflamed against County

---

[3] A true and correct copy of Exhibit A is attached to the Affidavit of Grant T. Bakke, February 25, 2025, filed herewith.

Defendants.[4] Unsealing the videos would only heighten the risk of jury bias, and would in essence reward Allen for violating the protective order and failing to obtain this Court's leave before filing confidential videos which engendered media attention in her favor and created the distinct possibility of bias against County Defendants. This type of gamesmanship goes against the spirit of our adversarial system.

## II. CONCLUSION

For the above reasons, County Defendants request the Court to deny Allen's motion to unseal documents.

Dated this 25th day of February, 2025.

BAKKE GRINOLDS WIEDERHOLT

By: /s/ *Grant T. Bakke*
Randall J. Bakke (#03989)
Shawn A. Grinolds (#05407)
Grant T. Bakke (#09106)
300 West Century Avenue
P.O. Box 4247
Bismarck, ND 58502-4247
(701) 751-8188
rbakke@bgwattorneys.com
sgrinolds@bgwattorneys.com
gbakke@bgwattorneys.com

---

[4] *See generally* Ex A (providing opinion of the author that, "Surveillance video shows Higdem's behavior worsened dramatically over the course of the nine hours she was in her cell. Her hallucinations ratcheted back up[]" and quoting a statement from Allen's attorney Noel that "Brunelle and Azure decided watching movies and fondling each other were more important than human life and dignity."); N.D.C.C. § 28-14-06(6) (courts may strike a juror for cause if the juror has "an unqualified opinion or belief as to the merits of the action founded upon knowledge of its material facts or some of them."); *see also Slaubaugh v. Slaubaugh*, 499 N.W.2d 99, 106-07 (N.D. 1993) (widespread pre-trial publicity—"ranging from 'scuttlebutt' to newspaper articles"—supports changing venue); *Jerry Harmon Motors, Inc. v. First Nat'l Bank & Tr.*, 440 N.W.2d 704, 706, 710 (N.D. 1989) (relevant pre-trial publicity can include "articles specifically relating to this lawsuit"); *Haugo v. Haaland*, 349 N.W.2d 25, 29 (N.D. 1984) (noting "considerable" publicity including an article).

- 9 -

        Attorneys for Defendants Myles Brunelle, in his individual capacity; April Azure, in her individual capacity; and Rolette County

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **DEFENDANTS MYLES BRUNELLE, APRIL AZURE, AND ROLETTE COUNTY'S RESPONSE TO PLAINTIFF'S MOTION TO UNSEAL DOCUMENTS** was on the 25th day of February, 2025, was filed electronically with the Clerk of Court through ECF.

Andrew J. Noel
Marc E. Betinsky
Julie Moroney
Robins Kaplan LLP
800 LaSalle Avenue
Ste 2800
Minneapolis, MN 55402
anoel@robinskaplan.com
mbetinsky@robinskaplan.com
jmoroney@robinskaplan.com

Timothy Q. Purdon
Robins Kaplan LLP
1207 West Divide Avenue, Suite 200
Bismarck, ND 58503
tpurdon@robinskaplan.com

Megan J. Flom
Randall S. Hanson
Camrud, Maddock, Olson & Larson, LTD
PO Box 5849
Grand Forks, ND 58206-5849
mflom@camrudlaw.com
rhanson@camrudlaw.com

        By: _/s/ Grant T. Bakke_
            GRANT T. BAKKE